DAVIS, Judge.
 

 *511
 
 This case involves a dispute regarding the meaning of the phrase "in or affecting commerce" as used in North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). Richard C. Alexander ("Defendant") appeals from a default judgment entered in favor of Eric Carl Alexander ("Plaintiff") on his claims for breach of fiduciary duty, unjust enrichment, and unfair and deceptive trade practices under the UDTPA. On appeal, Defendant argues that the trial court erred in determining that his acts were "in or affecting commerce" for purposes of the UDTPA. After careful review, we affirm in part, reverse in part, and remand for entry of a new judgment.
 

 *512
 

 Factual Background
 

 Defendant and his late brother, Carl Alexander ("Carl"), operated Otto Trucking, Inc. ("Otto Trucking"), a closely-held corporation, together from 1998 until February 2013. The company provided shipping services to Caterpillar, Inc., its sole customer. Originally, out of the 100 total shares of stock in the corporation, Defendant and Carl each held 45 shares, the corporation controlled nine shares, and the bookkeeper, Claire Graham, held the remaining share.
 

 A stock transfer occurred at some point prior to February 2013 as a result of which Defendant held 51 shares, Carl controlled 45 shares, and Graham held the remaining four shares. Upon Carl's death in February 2013, his 45 shares passed to Plaintiff, his son.
 

 Before Carl's death, he and Defendant had generally made decisions regarding shareholder distributions jointly and informally. At the end of each year, they would distribute all of the funds held by the corporation except for those funds necessary to operate the company through the following March.
 

 On 13 May 2015, Plaintiff sued Defendant in Macon County Superior Court alleging that Defendant had misappropriated Otto Trucking's corporate assets. The complaint included allegations that Defendant had (1) "caused the Corporation to pay himself individually a monthly fee to use an area of land near the Defendant's real property ... to park and store corporate vehicles and equipment[,]" the monthly payment for which was "grossly in excess of a market rent for the land used...."; (2) "used corporate funds and credit to pay for wholly personal expenses," including a vacation to Costa Rica and personal health care; and (3) paid a total of $16,925 in corporate funds to family members and friends even though the payments "had no business purpose...."
 

 In his complaint, Plaintiff alleged that Defendant was liable for breach of fiduciary duty, unjust enrichment, and unfair and deceptive trade practices under the UDTPA. Plaintiff also requested that Otto Trucking
 
 *903
 
 be dissolved. Defendant was served with a summons and complaint on 14 May 2015. After Defendant failed to file an answer, Plaintiff moved for entry of default on 18 June 2015, and the clerk of court made an entry of default that same day.
 

 Plaintiff moved for a default judgment on 19 June 2015. A hearing was held on 20 July 2015 before the Honorable Tommy Davis in Macon County Superior Court. Plaintiff, Defendant, and Graham testified at the hearing. The trial court entered a default judgment on 31 July 2015, which included the following pertinent findings of fact:
 

 *513
 
 10. The Defendant RICHARD ALEXANDER, as majority shareholder in the corporation OTTO TRUCKING, INC., over the course of the years 2014 and 2015 misdirected and misappropriated corporate funds to his personal benefit. The amounts found to be misdirected and misappropriated by the Defendant RICHARD ALEXANDER in 2014 and 2015 are as follows:
 

 2014 payments
 

 a) $24,000 in total payments denominated as 'land rent' in the corporation's financial records;
 

 b) $16,925 in total payments made to the Defendant RICHARD ALEXANDER'S mother and other family members;
 

 c) $759.02 in a payment made to purchase airline tickets with Spirit Airlines for a personal trip to Costa Rica;
 

 d) $183.71 in a payment made to Asheville Eye Associates for a personal expense;
 

 e) $389.62 in total payments for personal meals and entertainment;
 

 f) $202.46 in a payment made for golfing;
 

 g) $100 in a payment made for repairs to an excavator;
 

 2015 payments
 

 h) $12,000 in total payments denominated as 'land rent' in the corporation's financial records;
 

 i) $1,490.99 in total payments for personal travel;
 

 j) $202.11 in total payments made for meals and entertainment in Costa Rica;
 

 The total amount of misappropriations for 2014 and 2015 is $56,252.91.
 

 The trial court found Defendant liable for breach of fiduciary duty, unjust enrichment, and unfair and deceptive trade practices under the UDTPA. The court declined to dissolve Otto Trucking "given the profitability and ongoing operation of the business of the company." With regard to Plaintiff's UDTPA claim, the trial court specifically found that Defendant's "acts of misappropriation were unfair and deceptive acts which occurred in and affected commerce."
 

 *514
 
 The trial court determined that had the funds not been misappropriated Plaintiff would have received a $25,313.81 disbursement. Based on the court's conclusion that Plaintiff was entitled to prevail on his UDTPA claim, the court trebled his damages to the amount of $75,941.42 and awarded Plaintiff attorney's fees in the amount of $5,125, resulting in a total judgment for Plaintiff in the amount of $81,066.42. Defendant filed a timely notice of appeal.
 
 [1]
 

 Analysis
 

 Defendant's sole argument on appeal is that the trial court erred in finding him liable under the UDTPA because his acts were not "in or affecting commerce."
 
 [2]
 
 We agree.
 

 Pursuant to Rule 55 of the North Carolina Rules of Civil Procedure, "[w]hen a defendant fails to timely answer a complaint, an entry of default may be made by the clerk on motion of the plaintiff."
 
 Revelle v. Chamblee
 
 ,
 
 168 N.C.App. 227
 
 , 230,
 
 606 S.E.2d 712
 
 , 714 (2005) (citation omitted). Once an entry of default has been made, Rule 55 authorizes the plaintiff to move for entry of a default judgment.
 
 See
 
 N.C. R. Civ. P. 55(b). Upon
 
 *904
 
 the filing of a motion for a default judgment, the trial court may hold a hearing in order to "determine the amount of damages or to establish the truth of any averment by evidence or to take an investigation of any other matter[.]" N.C. R. Civ. P. 55(b)(2)(a).
 

 "Once the default is established defendant has no further standing to contest the factual allegations of plaintiff's claim for relief."
 
 Webb v. McJas, Inc
 
 .,
 
 228 N.C.App. 129
 
 , 133,
 
 745 S.E.2d 21
 
 , 24 (2013) (citation and quotation marks omitted). If "the allegations of the complaint are sufficient to state a claim, the defendant has no further standing to contest the merits of plaintiff's right to recover."
 
 Hartwell v. Mahan
 
 ,
 
 153 N.C.App. 788
 
 , 790,
 
 571 S.E.2d 252
 
 , 253 (2002) (citation and quotation marks omitted),
 
 disc. review denied
 
 ,
 
 356 N.C. 671
 
 ,
 
 577 S.E.2d 118
 
 (2003). However, "[a] default judgment admits only the allegations contained within the complaint, and a defendant may still show that the complaint is insufficient to warrant plaintiff's recovery."
 
 Webb
 
 ,
 
 228 N.C.App. at 133
 
 ,
 
 745 S.E.2d at 24
 
 (citation and quotation marks omitted).
 

 *515
 
 The UDTPA, which is contained in Chapter 75 of the North Carolina General Statutes, provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."
 
 N.C. Gen. Stat. § 75-1.1
 
 (a) (2015). "Whether an act found ... to have occurred is an unfair or deceptive practice which violates N.C.G.S. § 75-1.1 is a question of law for the court."
 
 Walker v. Fleetwood Homes of N.C., Inc
 
 .,
 
 362 N.C. 63
 
 , 71,
 
 653 S.E.2d 393
 
 , 399 (2007) (citation and quotation marks omitted). If a violation of the UDTPA is shown, the plaintiff is entitled to recover treble damages, and the trial court has the discretion to award attorney's fees.
 
 N.C. Gen. Stat. §§ 75-16
 
 , -16.1 (2015).
 

 For purposes of the UDTPA, the term " 'commerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession."
 
 N.C. Gen. Stat. § 75-1.1
 
 (b). The phrase " 'business activities' connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized."
 
 White v. Thompson
 
 ,
 
 364 N.C. 47
 
 , 52,
 
 691 S.E.2d 676
 
 , 679 (2010) (citation, quotation marks, brackets, and ellipses omitted).
 

 "Although this statutory definition of commerce is expansive, the [UDTPA] is not intended to apply to all wrongs in a business setting."
 
 HAJMM Co. v. House of
 

 Raeford Farms, Inc
 
 .,
 
 328 N.C. 578
 
 , 593,
 
 403 S.E.2d 483
 
 , 492 (1991). In
 
 White,
 
 our Supreme Court emphasized that the UDTPA "is not focused on the internal conduct of individuals within a single market participant, that is, within a single business[,]" but rather "the General Assembly intended the Act's provisions to apply to interactions
 
 between market participants
 
 ."
 
 White
 
 ,
 
 364 N.C. at 53
 
 ,
 
 691 S.E.2d at 680
 
 (emphasis added).
 

 In
 
 White
 
 , three welders formed Ace Fabrication and Welding ("ACE"), a partnership created primarily to provide welding services for a plant owned by Smithfield Packing Company, Inc. ("Smithfield").
 
 Id.
 
 at 49,
 
 691 S.E.2d at 677
 
 . The three partners agreed that they would divide up the contracts they won between themselves and earn hourly wages for the hours each of them actually worked. One of the partners-the defendant-subsequently violated this agreement by (1) hiring several welders not affiliated with ACE to help him perform certain Smithfield jobs that had been awarded to ACE; and (2) bidding for Smithfield welding jobs on behalf of a new company he had formed called PAL. As a result of the defendant's actions, ACE ultimately went out of business.
 
 Id.
 
 at 49-50,
 
 691 S.E.2d at 677-78
 
 . The defendant's former business
 
 *516
 
 partners sued him for breach of fiduciary duty and for unfair and deceptive trade practices.
 
 Id.
 
 at 50,
 
 691 S.E.2d at 678
 
 .
 

 After the jury found that the defendant had breached his fiduciary duty to the plaintiffs, the trial court determined that the defendant had violated the UDTPA.
 
 Id.
 
 at 51,
 
 691 S.E.2d at 678
 
 . Our Supreme Court affirmed the decision of a divided panel of this Court, holding that the defendant's unlawful
 
 *905
 
 acts toward his partners did
 
 not
 
 fall within the UDTPA because his acts were not "in or affecting commerce." The Supreme Court explained its ruling as follows:
 

 [T]he unfairness of [the defendant's] conduct occurred in interaction among the partners within ACE. Plaintiffs were partners with [the defendant] in a single market participant. Plaintiffs alleged and proved that [the defendant] breached his fiduciary duty as a partner in this single market participant. ... Because [the defendant] unfairly and deceptively interacted only with his partners, his conduct occurred completely within the ACE partnership and entirely outside the purview of the [UDTPA].
 

 Id.
 
 at 53-54,
 
 691 S.E.2d at 680
 
 .
 

 The Court specifically rejected the argument that the defendant's acts were "in or affecting commerce" on the theory that they caused ACE to cease its operations as a viable competitor in the marketplace for specialty fabrication work, which potentially increased the prices that Smithfield would need to pay for such work in the future. The Court held that such an argument "overlooks that the unfairness of [the defendant's] conduct did not occur in his dealings with Smithfield Packing" and that the defendant "was found to have breached his fiduciary duty
 
 to his partners
 
 through his conduct within the ACE partnership."
 
 Id.
 
 at 54,
 
 691 S.E.2d at 680
 
 (emphasis added). The Supreme Court concluded that "[t]he General Assembly simply did not intend for such conduct to fall within the [UDTPA]'s coverage."
 

 Id.
 

 We believe that the Supreme Court's analysis in
 
 White
 
 compels a result in Defendant's favor in the present case. Here, the evidence shows that the unlawful acts by Defendant involved his misappropriation of Otto Trucking funds through payments made directly to himself and his family members as well as payments made to cover some of his own personal expenses.
 

 As in
 
 White,
 
 the "unfairness of [Defendant's] conduct did not occur in his dealings with [other market participants.]"
 

 Id.
 

 The inflated
 
 *517
 
 payments that Defendant caused Otto Trucking to make to himself-as "land rent" in connection with the storage of the company's vehicles-and the other payments he caused Otto Trucking to make for the benefit of himself and his family members are more properly classified as the misappropriation of corporate funds within a single entity rather than commercial transactions between separate market participants "in or affecting commerce." Like the plaintiff in
 
 White,
 
 Plaintiff here "alleged and proved that [Defendant] breached his fiduciary duty as [co-owner of] this single market participant. ... Because [Defendant] unfairly and deceptively interacted only with [Plaintiff, his co-owner], his conduct occurred completely within [the corporation] and entirely outside the purview of the [UDTPA]."
 
 Id.
 
 at 53-54,
 
 691 S.E.2d at 680
 
 .
 

 The cases cited by Plaintiff are materially distinguishable. Defendant principally relies on
 
 Sara Lee Corp. v. Carter
 
 ,
 
 351 N.C. 27
 
 ,
 
 519 S.E.2d 308
 
 (1999),
 
 disc. review denied
 
 ,
 
 365 N.C. 360
 
 ,
 
 718 S.E.2d 396
 
 (2011). In that case, the defendant-employee of the plaintiff, Sara Lee Corporation ("Sara Lee"), was responsible for purchasing computer equipment for Sara Lee from outside vendors. The defendant created several companies through which he sold Sara Lee equipment at inflated prices while concealing his own ownership interests in those businesses.
 
 Id.
 
 at 29,
 
 519 S.E.2d at 309
 
 .
 

 The trial court found that the defendant had breached his fiduciary duty to Sara Lee through this self-dealing and that his acts came within the UDTPA, and the Supreme Court agreed that the defendant's actions were "in or affecting commerce." The Court held that "[t]rusting that these were legitimate transactions secured at competitive prices in the marketplace, [Sara Lee] regularly conducted business with the companies in which defendant had an interest. In this case, defendant and plaintiff clearly engaged in buyer-seller relations in a business setting[.]"
 
 Id.
 
 at 33,
 
 519 S.E.2d at 312
 
 . In
 
 White
 
 , the Supreme Court distinguished
 
 Sara Lee
 
 , noting that there "the defendant-employee's unfair or deceptive actions were within the [UDTPA]'s ambit because they did not occur solely within the employer-employee relationship, but rather occurred in interactions between the plaintiff and the defendant's outside
 
 *906
 
 businesses."
 
 White
 
 ,
 
 364 N.C. at 53
 
 ,
 
 691 S.E.2d at 680
 
 .
 

 Defendant also cites
 
 Songwooyarn Trading Co. v. Sox Eleven, Inc.
 
 ,
 
 213 N.C.App. 49
 
 ,
 
 714 S.E.2d 162
 
 (2011). In that case, the plaintiff corporation, Songwooyarn Trading Company ("Songwooyarn"), created a separate corporation, Sox Eleven, Inc. ("Sox Eleven"), and hired the defendant, Ung Chul Ahn, to operate it. Sox Eleven was set up as an intermediary to facilitate the sale of socks manufactured by Songwooyarn-a
 
 *518
 
 South Korean company-to wholesalers in the United States.
 
 Id.
 
 at 51,
 
 714 S.E.2d at 164
 
 . Songwooyarn sued Ahn after he failed to remit to Songwooyarn a payment that had been made by a wholesaler to Sox Eleven for an order of socks sold by Songwooyarn. The trial court found Ahn liable under the UDTPA.
 
 Id.
 
 at 53,
 
 714 S.E.2d at 166
 
 .
 

 On appeal, this Court affirmed the trial court's ruling, finding the case to be analogous to
 
 Sara Lee
 
 and relying on the fact that Songwooyarn and Sox Eleven were "distinct corporate entities."
 
 Id.
 
 at 57,
 
 714 S.E.2d at 168
 
 . We held as follows:
 

 By misappropriating th[e] funds, Defendant Ahn interrupted the commercial relationship between Songwooyarn and Sox Eleven. Because there are multiple companies, including a North Carolina corporation, involved, we conclude that Ahn's actions were "in or affecting commerce" and constituted unfair or deceptive acts or practices.
 

 Id.
 

 Unlike in
 
 Sara Lee
 
 and
 
 Songwooyarn
 
 , the present case does not involve "outside businesses," "distinct corporate entities," or the interruption of a "commercial relationship" between two market participants. Rather, as in
 
 White
 
 , the unlawful acts at issue here occurred within a single market participant.
 

 For these reasons, the trial court erred in concluding that Defendant's actions were "in or affecting commerce." Therefore, no legal basis existed for finding Defendant liable under the UDTPA and awarding Plaintiff treble damages and attorney's fees.
 

 Conclusion
 

 For the reasons stated above, we reverse the portion of the trial court's 31 July 2015 judgment finding Defendant liable under the UDTPA, trebling the amount of damages, and awarding Plaintiff attorney's fees. Accordingly, we remand this matter for entry of a new judgment consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; REMANDED.
 

 Judges INMAN and ENOCHS concur.
 

 [1]
 

 Although Otto Trucking was named as a defendant in the complaint, it is not a party to this appeal.
 

 [2]
 

 Defendant does not challenge any aspect of the trial court's default judgment other than its finding that his acts were "in or affecting commerce" and the resulting determination that Defendant was liable under the UDTPA.