Bandy v. A Perfect Fit for You, 2017 NCBC 63.

STATE OF NORTH CAROLINA

COUNTY OF CARTERET

SHELLEY P. BANDY,

        Plaintiff,

STATE OF NORTH CAROLINA,

        Intervenor-Plaintiff,

   v.

MARGARET A. GIBSON,
individually, and RONALD WAYNE
GIBSON,

        Defendants,

A PERFECT FIT FOR YOU, INC.,

        Defendant and
        Intervenor-Defendant

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 456

**OPINION AND ORDER**

THIS MATTER comes before the Court upon Defendants Margaret A. Gibson and Ronald Wayne Gibson's Motion for Partial Judgment on the Pleadings ("Motion") pursuant to North Carolina Rule of Civil Procedure 12(c) (hereinafter "Rule(s)").

THE COURT, having considered the Motion, the briefs in support of and in opposition to the Motion, the arguments of counsel at the hearing, and other appropriate matters of record, concludes that the Motion should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

*Wheatly, Wheatly, Weeks, Lupton & Massie, P.A., by Wesley C. Cooper, Esq., Stevenson L. Weeks, Esq., and C.R. Wheatly, III, Esq. for Plaintiff Shelley P. Bandy.*

*Ward and Smith, P.A., by Michael J. Parrish, Esq. and E. Bradley Evans, Esq. for Defendants Margaret A. Gibson and Ronald Wayne Gibson.*

McGuire, Judge.

I.     FACTUAL AND PROCEDURAL BACKGROUND.

1.     Plaintiff Shelley P. Bandy ("Bandy") is a certified fitter of medical devices for use of mastectomy, diabetes, and other patients. Certification as fitter is required in order to directly bill for fitter services through Medicare, Medicaid, and some private insurance carriers.  (First Am. Compl. ¶¶ 6—7.)

2.     Defendant Margaret A. Gibson's ("Margaret") background is in medical insurance billing. Ronald Wayne Gibson ("Ronald") (collectively, Margaret and Ronald are the "Gibsons") is Margaret's husband. Bandy and Margaret began working together for a retail medical device and pharmacy business in Carteret County in 2008. While working together, Bandy and Margaret became experienced in billing patients for fitting services. (First Am. Compl. ¶¶ 8—11.)

3.     In 2013-14, Bandy and Margaret decided to go into business together utilizing Bandy's certification as a fitter and ability to direct bill for fitting services and Margaret's experience with medical insurance billing to create a "boutique business offering custom fitting services and sales of medical and therapeutic devices." (First Am. Compl. ¶¶ 15—24.) Bandy and Margaret eventually agreed that they would form an "S" corporation with 500 shares of stock, with Bandy and Margaret each owning 250 shares. Bandy left it to Margaret to take care of forming the corporation, while Bandy worked on the "operational side of the business." (First Am. Compl. ¶ 32.)  On September 14, 2014, Bandy and Margaret co-signed a

lease for a retail store location, and each signed a personal guaranty on the lease. (First Am. Compl. ¶¶ 37—38, Exs. E and F.)

4.    On September 18, 2014, Margaret filed with the North Carolina Secretary of State Articles of Incorporation forming A Perfect Fit for You, Incorporated ("Perfect Fit"). (First Am. Compl. ¶ 39, Exh. G.) The Articles of Incorporation authorized 500 shares of stock in Perfect Fit, but the shares have never been issued. (First Am. Compl. ¶ 41.) Bandy alleges that Margaret represented to her that they were both equal shareholders in the business with Margaret serving as President and Bandy as Vice-President. (First Am. Compl. ¶ 40.)

5.    During October, 2014, Perfect Fit prepared to open its doors. Bandy contributed office equipment and furniture for use in the store, and Margaret provided an investment of approximately $65,000. Perfect Fit opened for business in October 2014. (First Am. Compl. ¶¶ 44—49.) Bandy alleges that she and Margaret held themselves out to the public and each other as "co-owners" of the business. (First Am. Compl. ¶¶ 50—51.)

6.    Bandy worked tirelessly to build Perfect Fit's business, developing relationships with health care providers and vendors and suppliers in the Carteret County area and later other parts of North Carolina. (First Am. Compl. ¶¶ 55—65.) Between May and September, 2015, Bandy generated over $2 million dollars in revenue for Perfect Fit. (First Am. Compl. ¶ 66.) In October, 2015, alone Bandy generated another $2 million dollars in revenue for Perfect Fit. (First Am. Compl. ¶

75.) Bandy alleges she alone generated more than $7 million in revenue for Perfect Fit during 2015. (First Am. Compl. ¶¶ 77—79.)

7. In early 2016 Bandy began to suspect that "her ownership interest in [Perfect Fit] was not what [Margaret] had represented it to be and what the parties had agreed to. (*sic*)" (First Am. Compl. ¶ 89.) In March of 2016, Bandy discovered that Perfect Fit was paying a salary to Ronald, who was neither an employee nor an owner of Perfect Fit. (First Am. Compl. ¶ 91.) Bandy also reviewed corporate records and discovered that Margaret had never issued any shares of stock in Perfect Fit to Bandy. (First Am. Compl. ¶ 97.)

8. Bandy also reviewed Perfect Fit's financial records and discovered that Margaret had made or authorized withdrawals of over $3,320,419.00 from Perfect Fit to herself and Ronald during the five month period from December 2015 to April 2016, and had withdrawn over $7,800,000.00 from the business since its incorporation in October of 2014. (First Am. Compl. ¶ 98.) Bandy claims that the withdrawals were in "no way related to the administration or operation of [Perfect Fit]." (First Am. Compl. ¶ 99.) Margaret has directed payments from Perfect Fit to herself, Ronald, Ronald's construction company, and a limited liability company owned by Margaret and Ronald. (First Am. Compl. ¶¶ 98—109.) Margaret also has caused Perfect Fit to make payments for the purchase of automobiles and a house for her and Ronald, and for life insurance, annuities, and pension and profit sharing plans for the benefit of her and Ronald. (First Am. Compl. ¶¶ 110—125.)

9. On May 16, 2016, Bandy initiated this action by filing a verified complaint in Carteret County Superior Court against Margaret and Perfect Fit.[1] In the verified complaint, Bandy alleged that Margaret reneged on an agreement that Bandy would be a 50% shareholder in Perfect Fit, and later transferred out of Perfect Fit and to the Gibsons millions of dollars in which Bandy has a 50% ownership interest. The verified complaint contained, *inter alia*, a motion for a temporary restraining order against the Gibsons and a motion for appointment of a receiver over Perfect Fit.

10. On May 16, 2016, the Honorable Benjamin G. Alford issued a Temporary Restraining Order and an Order on Appointment of Receiver ("Receiver Order"). The Receiver Order appointed Douglas Goines as the receiver of "property and assets which are the subject of this action" and provided Goines with "full power to take possession of and manage [Perfect Fit's] business, books, and profits, less any necessary expenditures incurred in connection with the necessary operation of the property and business until a final adjudication of this cause may be had." (Receiver Order 1.)

11. On June 15, 2016, Judge Alford issued an Order Granting Preliminary Injunction and Appointment of Receiver ("PI Order"). The PI Order froze all assets and funds in the possession of the Gibsons that were the result of corporate funds transferred out of Perfect Fit's bank account by Margaret. (PI Order 5–6.) Judge Alford also ordered that Goines would continue to act as receiver for Perfect Fit. (PI

---

[1] On July 12, 2016, Bandy filed the First Amended Complaint that, *inter alia*, added Ronald Wayne Gibson as a Defendant.

Order 6.) Goines has managed Perfect Fit as receiver since his appointment in May, 2016.

12. On June 15, 2016, this matter was designated to the North Carolina Business Court. On June 16, 2016, the case was assigned to the undersigned by order of the Honorable James L. Gale, Chief Judge of the North Carolina Business Court.

13. On July 12, 2016, Bandy filed the First Amended Complaint ("Amended Complaint"). The Amended Complaint makes claims against Defendants for declaratory judgment (Count One), fraud (Count Two), constructive fraud (Count Three), breach of contract (Count Four), conversion (Count Five), unjust enrichment (Count Six), violations of North Carolina's Unfair and Deceptive Trade Practices Act (Count Seven), piercing the corporate veil (Count Eight), punitive damages (Count Nine), judgment against the person (Count Ten), and attachment (Count Eleven). The Amended Complaint also sought injunctive relief (Count Twelve) and the appointment of a receiver over Perfect Fit and its assets (Count Thirteen).

14. On July 25, 2016, the Gibsons filed the Motion, seeking judgment on the pleadings on Bandy's claims for unjust enrichment (Count VI), unfair and deceptive trade practices (Count VII), and judgment against the person (Count X). On September 7, 2016, the Court held a hearing on the Motion, and the Motion was ripe for disposition.

15.     Subsequent to the hearing on the Motion, however, circumstances arose that drastically altered the course of this lawsuit.[2] As a result of those circumstances, on January 19, 2017, the Court issued an order staying the case. The stay subsequently was extended by the Court, but expired on June 30, 2017. Accordingly, the Court now decides the Motion.

II.     DISCUSSION AND ANALYSIS.

16.     The purpose of Rule 12(c) is "to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). The Court must "view the facts and permissible inferences in the light most favorable to the nonmoving party." *Id.* "A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve factual issues, judgment on the pleadings is generally inappropriate." *Id.* In deciding a 12(c) motion, the court may consider documents attached and incorporated into the pleadings. *Reese v. Mecklenburg Cty.*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 38 (2009). A Rule 12(c) motion for judgment on the pleadings should be denied "unless it is clear that plaintiff is not entitled to any relief under any statement of facts." *Praxair, Inc. v. Airgas, Inc.*, 1999 NCBC LEXIS 5, at *8 (N.C. Super. Ct. May 26, 1999).

17.     In the Motion, the Gibsons seek judgment in their favor on Bandy's claims for unjust enrichment (Count VI), unfair and deceptive trade practices

---

[2] The circumstances are described in the Court's order issued on June 19, 2017. *Bandy v. A Perfect Fit For You*, 2017 NCBC LEXIS 56 (N.C. Super. Ct. June 29, 2017).

(Count VII), and judgment against the person (Count X). The Court will consider each claim in turn.

A. *Unjust Enrichment.*

18. In Count VI of the Amended Complaint, Bandy alleges that Margaret, Ronald, and Perfect Fit have been unjustly enriched by her work on behalf of, and the sales she generated for, Perfect Fit. (First Am. Compl. ¶¶ 165–171.) Bandy alleges that "[Margaret], on behalf of the closely-held corporation and herself, consciously accepted the money and consciously directed the withdrawal of over $7.8 million dollars for her own benefit, [and] that of [Ronald]… ." (First Am. Compl. ¶ 168.) Bandy also alleges that Ronald "has received and consciously accepted measurable benefits." (First Am. Compl. ¶ 169.)

19. "The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Collins v. Davis,* 68 N.C. App. 588, 591, 315 S.E.2d 759, 761 (1984); *Norman v. Nash Johnson & Sons' Farms, Inc.,* 140 N.C. App. 390, 417, 537 S.E.2d 248, 266 (2000) ("In order to properly set out a claim for unjust enrichment, a plaintiff must allege that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received . . . ."). "An unjust enrichment claim is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556

(1988) (internal quotations omitted; citation omitted). Therefore, "if there is a contract between the parties the contract governs the claim and the law will not imply a contract." *Id.*

20. To state a claim for unjust enrichment, plaintiff must allege facts that show: (1) plaintiff conferred a benefit on defendant; (2) the benefit was not conferred officiously; (3) the benefit was not gratuitous; (4) the benefit was measurable; and (5) defendant consciously accepted the benefit. *Butler v. Butler*, 239 N.C. App. 1, 7, 768 S.E.2d 332, 336 (2015).

21. The Gibsons first contend that Bandy's unjust enrichment claim fails because North Carolina law will not imply a contract where an express agreement governs a party's claim. In the Amended Complaint, Bandy alleges that she and Margaret had an agreement to form Perfect Fit and that each would own 50% of the business, and that Margaret breached the agreement. (First Am. Compl. ¶¶ 153—159.) The Gibsons argue that because Bandy has alleged an express contract, she "may not pursue a claim for unjust enrichment. (Gibsons' Mem. Supp. Mot. 4.)

22. The Gibsons' argument is simply incorrect. "The general rule, which is subject to some qualification under statutes, is that the statement of the same cause of action in different ways or forms, each in a separate count, so as to meet different possible phases of the evidence as it may be developed at the trial, or different possible legal views, is permissible . . . [t]he plaintiff can unite two causes of action relating to the same transaction and have alternative relief." *Jenkins v. Duckworth & Shelton, Inc.*, 242 N.C. 758, 759, 89 S.E.2d 471, 472 (1955) (citations omitted).

This rule applies to pleading an express contract and a claim for unjust enrichment in the alternative. *Id.*; *James River Equip., Inc. v. Mecklenburg Utils., Inc.*, 179 N.C. App. 414, 419, 634 S.E.2d 557, 560 (2006) ("It is well-established that liberal pleading rules permit pleading in the alternative, and that breach of express contract and quantum merit theories may be pursued in the complaint even if plaintiff may not ultimately be able to prevail on both.").

23.     In their reply, the Gibsons argue that even if Bandy may allege breach of contract and unjust enrichment in the same action, she must expressly label one claim as "in the alternative." (Gibsons' Reply Supp. Mot 1—2.) The Gibsons cite no authority in support of its argument that failure to specifically plead unjust enrichment "in the alternative" requires dismissal of her claim.

24.     North Carolina is a "notice pleading" state where a plaintiff is only required to set forth "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved showing that the pleader is entitled to relief . . . ." Rule 8(a)(1); *Radcliffe v. Avenel Homeowners Ass'n*, 789 S.E.2d 893, 913, 2016 N.C. App. LEXIS 824, at *52 (2016). The Court is mindful that "[t]he adoption of the notice theory of pleading indicated the legislature's intention that controversies be resolved on their merit . . . following an opportunity for discovery, rather than resolving them on technicalities of pleading." *Wentz v. Unifi, Inc.*, 89 N.C. App. 33, 38, 365 S.E.2d 198, 200 (1988) (internal quotations omitted; citation omitted). The Court is unwilling to prevent Bandy's unjust

enrichment claim from moving to discovery because it was not specifically pleaded in the alternative to her breach of contract claim. The Motion for judgment on the pleadings concerning Bandy's failure to specifically assert her unjust enrichment claim in the alternative to her breach of contract claim should be DENIED.

25. The Gibsons next argue that Bandy's unjust enrichment claim should be dismissed because the work performed by Bandy, including her efforts in generating millions of dollars in sales, was for the benefit of Perfect Fit and did not confer a direct benefit on Margaret or Ronald individually. Since only Perfect Fit *directly* benefited from Bandy's efforts, Margaret argues that Bandy's claim of unjust enrichment against both her and her husband should be dismissed. The Gibsons' base their argument on the North Carolina Court of Appeals decision in *Effler v. Pyles*, 94 N.C. App. 349, 380 S.E.2d 149 (1989). In *Effler*, the plaintiff alleged that her former son-in-law (Richard) had agreed (during his marriage to plaintiff's daughter) to apply the proceeds from the sale of certain property to repay a loan the plaintiff had co-signed for her daughter and Richard. After the plaintiff co-signed for the loan, the plaintiff's daughter passed away. Richard remarried and then conveyed the property to himself and his new wife as tenants by the entireties. Richard and his new wife subsequently sold the property, but did not use the proceeds to repay the plaintiff. *Id.* at 352, 380 S.E.2d at 151. The plaintiff sued Richard for breach of the oral agreement to repay the loan and sued Richard's new wife for unjust enrichment, claiming that she diverted to herself the sale proceeds of the property. The trial court dismissed the unjust enrichment claim against the new

wife at summary judgment, and the Court of Appeals affirmed, holding "[a]lthough [Richard] had previously acquired his interest in this property with plaintiff's assistance, this does not satisfy plaintiff's burden of showing that she conferred a benefit *directly* on [the new wife]." *Id.* at 353, 380 S.E.2d at 152 (emphasis added).

26. To the extent that the Gibsons argue that *Effler* imposes a requirement that, in order to state a claim for unjust enrichment, Bandy must allege that she directly conferred a benefit on Margaret or Ronald, the Court concludes that they are incorrect. First, the North Carolina Supreme Court has not expressly imposed a requirement that a benefit be directly conferred in order to support a claim for unjust enrichment. *Booe,* 322 N.C. at 570, 369 S.E.2d at 556 ("In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party [and] the defendant must have consciously accepted the benefit."). In fact, the Supreme Court's decision in *Embree Constr. Grp., Inc. v. Rafcor, Inc.,* 330 N.C. 487, 411 S.E.2d 916 (1992), suggests that an unjust enrichment claim does not always require a direct benefit. In *Embree*, the Supreme Court held that plaintiff-contractor sufficiently alleged a claim for unjust enrichment against defendant-lender even though the plaintiff-contractor provided no services directly to the defendant-lender. The Court held that, although not a direct beneficiary of plaintiff-contractor's services, the lender had benefited at the plaintiff's expense because it did not disburse the funds remaining in the

construction loan to plaintiff while it also acquired the completed building as security for the loan at issue. *Id*. at 495—97, 369 S.E.2d 922–23.

27. In addition, decisions subsequent to *Effler* have concluded that a claim for unjust enrichment does not require a direct benefit. *See New Prime, Inc. v. Harris Transp. Co.*, 222 N.C. App. 317, 729 S.E.2d 732, 2012 N.C. App. LEXIS 921, at *11 (2012) (unpublished) ("Our holding in the instant case is in line with the Restatement and other states. Many jurisdictions do not require that the plaintiff confer a direct benefit on the defendant in order to recover under a theory of unjust enrichment."); *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 F. Appx. 916, 921, 2003 U.S. App. LEXIS 15067, at *13 (4th Cir. 2003) (discussing *Effler* and *Embree*, concluding that "[u]nder North Carolina law, it is sufficient for a plaintiff to prove that it has conferred some benefit on the defendant, without regard to the directness of the transaction."); *Lau v. Constable*, 2017 NCBC LEXIS 10, at *14—16 (N.C. Super. Ct. Feb. 7, 2017) ("Although *Effler* has not been expressly overruled, cases decided after *Effler* have held that an indirect benefit can support an unjust enrichment claim.").

28. In this case, Bandy has sufficiently alleged that her sales work and other efforts on behalf of Perfect Fit benefitted Margaret personally. Bandy alleges that Perfect Fit was a closely held corporation in which she and Margaret were the only shareholders.[3] Any benefit Bandy conferred on Perfect Fit would have directly

---

[3] Bandy also has alleged a claim for "Alter Ego/Piercing the Corporate Veil" (First Am. Compl. ¶¶ 179—182). Bandy alleges that Margaret dominated and controlled Perfect Fit and ignored corporate formalities, and that Perfect Fit's corporate form should be disregarded for purposes of imposing liability against Margaret. Thus, to the extent

benefitted Margaret. Margaret personally allowed or directed the distribution of more than $7 million from the assets of Perfect Fit to herself and Ronald. Bandy alleges those assets were acquired by Perfect Fit largely due to her sales and business development efforts. These allegations could support a claim that Bandy conferred a direct benefit, and clearly show she provided at least an indirect benefit, on Margaret. The Court cannot dismiss Bandy's unjust enrichment claim against Margaret at this stage of the proceedings, and the Motion for judgment on the pleadings concerning Bandy's claim for unjust enrichment against Margaret should be DENIED.

29. The issue of whether Bandy conferred a benefit on Ronald is a more difficult one. *See Norman Owen Trucking Inc. v. Morkoski*, 131 N.C. App. 168, 178, 506 S.E.2d 267, 274 (1998) (addressing whether plaintiff, which had contract with defendant-company to provide trucking services, failed to produce evidence at trial that it conferred a benefit directly on defendant-shareholder/director/employee of defendant-company or that he consciously accepted a benefit). With regard to the benefit conferred on Ronald, Bandy alleges that: Perfect Fit paid Ronald a salary despite the fact that Ronald was not employed by Perfect Fit (First Am. Compl. ¶¶ 93 and 115;) Margaret "made or authorized withdrawals" from Perfect Fit to Margaret and Ronald jointly in the amount of $3,320,419.00 (First Am. Compl. ¶ 98); Margaret made multiple payments from Perfect Fit directly to Ronald individually (First Am. Compl. ¶¶ 101, 104, 106, 109, and 113); Margaret "made,

Bandy's claim for unjust enrichment is asserted against Perfect Fit, she also has alleged a means of imposing liability directly against Margaret.

directed, and/or authorized" payments from Perfect Fit directly to Ronald's construction company (First Am. Compl. ¶ 102); Margaret purchased automobiles for Ronald using Perfect Fit funds (First Am. Compl. ¶¶ 110 and 121); Margaret made payments from Perfect Fit of $100,000.00 to an LLC owned by Margaret and Ronald (First Am. Compl. ¶ 107); and that Margaret made or authorized payments from Perfect fit to purchase life insurance policies, annuities, pensions, and a house for the benefit of Ronald (First Am. Compl. ¶¶ 111 and 114—125.) Bandy alleges that Margaret and Ronald "have benefitted directly and indirectly from the efforts and actions of Bandy" and that Ronald consciously accepted the benefits. (First Am. Compl. ¶ 169.)

30.    The Court concludes that Bandy has alleged that she conferred a benefit on Ronald, either directly or indirectly, through her work on behalf of Perfect Fit, and that Ronald consciously accepted the benefit. These allegations are sufficient to survive dismissal. *See Lau*, 2017 NCBC LEXIS 10, at *15—16. The Motion for judgment on the pleadings concerning Bandy's claim of unjust enrichment against Ronald should be DENIED.

*B. Unfair and Deceptive Trade Practices.*

31.    In Count Seven of the Amended Complaint, Bandy claims that Margaret violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.* ("UDTPA") (hereafter, all references to the North Carolina General Statutes will be to "G.S."). (First Am. Compl. ¶¶ 172—178.) Bandy alleges that (a) Margaret induced Bandy to contribute assets and perform work for

Perfect Fit by promising Bandy that she and Margaret were each 50% shareholders and owners of the company and that Margaret later reneged on that promise, (b) Margaret improperly took more than $7.8 million from Perfect Fit, (c) Margaret's conduct caused Bandy damages. (First Am. Compl. ¶¶ 173—176.)

32. The UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." G.S. § 75-1.1(a). Whether an act is unfair or deceptive practice which violates the UDTPA is a question of law for the court. *Alexander v. Alexander*, 792 S.E.2d 901, 904, 2016 N.C. App. LEXIS 1252, at *7 (2016).

33. For purposes of the UDTPA, the term "'commerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." G.S. § 75-1.1(b). The phrase "'business activities' [ ] connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." *White v. Thompson*, 364 N.C. 47, 52, 691 S.E.2d 676, 679 (2010). Additionally, the North Carolina Court of Appeals provided in *Alexander* that:

> Although this statutory definition of commerce is expansive, the [UDTPA] is not intended to apply to all wrongs in a business setting. *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991). In *White*, our Supreme Court emphasized that the UDTPA "is not focused on the internal conduct of individuals within a single market participant, that is, within a single business[,]" but rather "the General

> Assembly intended the Act's provisions to apply to interactions *between market participants*." *White*, 364 N.C. at 53, 691 S.E.2d at 680 (emphasis added).

792 S.E.2d at 904, 2016 N.C. App. LEXIS 1252, at *7—8.

34. The Gibsons argue that Bandy's UDTPA claim involves the internal affairs of Perfect Fit, namely a dispute over the ownership of the shares in the corporation and Margaret's actions as an officer and/or shareholder of Perfect Fit, and that these alleged actions were not "in or affecting commerce." (Gibsons' Mem. Supp. Mot. 8—10.) The Court agrees.

35. "The [UDTPA] is not focused on the internal conduct of individuals within a single market participant, that is, within a single business . . . [a]s a result, any unfair or deceptive conduct contained solely within a single business is not covered by the Act." *White*, 364 N.C. at 53, 691 S.E.2d at 680*; see also Weaver Inv. Co. v. Pressly Dev. Assoc.*, 234 N.C. App. 645, 654, 760 S.E.2d 755, 761 (2014) (dismissing UDTPA claim because "defendants' misconduct within the confines of the partnership was not 'in or affecting commerce . . . '"); *Polyquest, Inc. v. Vestar Corp., LLC*, 2014 U.S. Dist. LEXIS 14905, at *34—35 (E.D.N.C. February 6, 2014) (dismissing claim brought by one company against another engaged in a joint venture, holding "although Defendants' actions were not confined to the internal operations of a 'single business,' their actions were confined to the internal operation of a 'single market participant,' the joint venture"); *McKee v. Jam*es, 2014 NCBC LEXIS 74, at *42 (N.C. Super. Ct. Dec. 31, 2014) (dismissing UDTPA claims between members of an LLC because "the undisputed evidence of record does not

reveal a dispute between McKee Craft and another business or consumers at large, but rather a dispute between Plaintiffs and James as co-owners of McKee Craft").

36. Bandy's argument that Margaret's actions "affected businesses and consumers outside of [Perfect Fit]" such as Ronald, Ronald's construction company, the Gibsons' LLC, and the landlord who entered into a lease with Perfect Fit do not save her claim. (Bandy's Mem. Opp. Mot. 12.) There is no allegation that Margaret directed any unfair or deceptive conduct towards any of these third parties or towards any businesses or individuals other than Bandy. Any indirect dealings that Margaret or Perfect Fit had with other market participants was incidental to the alleged unfair conduct that took place solely within Perfect Fit. *Alexander*, 792 S.E.2d at 905, 2016 N.C. App. LEXIS 1252, at *10—11 (2016) (Majority shareholder's "misappropriation of [corporate] funds through payments made directly to himself and his family members as well as payments made to cover some of his own personal expenses" including "'land rent' in connection with the storage of the company's vehicles . . . are more properly classified as the misappropriation of corporate funds within a single entity rather than commercial transactions between separate market participants 'in or affecting commerce.'"); *Powell v. Dunn,* 2014 NCBC LEXIS 3, at *9—10 (N.C. Super. Ct. Jan. 28, 2014) ("As a result, when the unfair or deceptive conduct alleged only affects relationships within a single business or market participant, and not dealings with other market participants, that conduct is not 'in or affecting' commerce within the meaning of Section 75-1.1, even if other market participants may be indirectly involved in the unfair or

deceptive acts . . . [T]he involvement of an investment bank and another potential acquirer in the merger process provides a sufficient factual basis from which the court could conclude Plaintiffs' claim is 'in or affecting commerce.'").

37. The Court concludes that any alleged unfair or deceptive conduct in this action took place within Perfect Fit and was not in or affecting commerce. Therefore, the Motion for judgment on the pleadings concerning Bandy's UDTPA violation claim should be GRANTED.

C. *Judgment Against the Person.*

38. In Count X, Bandy purports to raise claims under G.S. §§ 1-410 and 1-311 for a judgment of arrest against the person against Margaret. (First Am. Compl. ¶¶ 191—193.) G.S. § 1-410 provides for arrest of a defendant in certain types of cases including, *inter alia*, "when the action is brought to recover damages for fraud or deceit" or "[w]hen the defendant has removed, or disposed of his property, or is about to do so, with intent to defraud his creditors." G.S. § 1-410 (4) and (5). G.S. § 1-311 provides for post-judgment "execution against the person." G.S. § 1-311 provides in relevant part as follows:

> If the action is one in which the defendant might have been arrested, an execution against the person of the judgment debtor may be issued to any county within the State, after the return of an execution against his property wholly or partly unsatisfied. But no execution shall issue against the person of a judgment debtor, unless an order of arrest has been served, as provided in the Article Arrest and Bail, or unless the complaint contains a statement of facts showing one or more of the causes of arrest required by law, whether such statement of facts is necessary to the cause of action or not. Provided, that where the facts are found by a jury, the

verdict shall contain a finding of facts establishing the right to execution against the person; and where jury trial is waived and the court finds the facts, the court shall find facts establishing the right to execution against the person. Such findings of fact shall include a finding that the defendant either (i) is about to flee the jurisdiction to avoid paying his creditors, (ii) has concealed or diverted assets in fraud of his creditors, or (iii) will do so unless immediately detained.

39.  Bandy alleges that "Gibson may be arrested pursuant to N.C.G.S. § 1-410" (First Am. Compl. ¶ 192), but "[i]n lieu of immediate arrest, Plaintiff hereby requests execution against the person, [Margaret], in the event execution against her property is returned wholly or partially unsatisfied pursuant to N.C.G.S. § 1-311." (First Am. Compl. ¶ 193.) The Gibsons seek dismissal of Count X, contending that these statutes do not create private causes of action, but instead create procedural remedies that may be invoked in appropriate cases. (Gibsons' Mem. Supp. Mot. 10—11.)

40.  Bandy asserts that judgment against the person should survive the Motion because "where there has not already been a lawful arrest under G.S. § 1-410, the complaint or affidavit must allege such facts as would have justified an order for such arrest." *Nunn v. Smith*, 270 N.C. 374, 378, 154 S.E.2d 497, 500 (1967) (noting that plaintiff's fraud claim was sufficient upon which to support an order of arrest under G.S. 1-410(4)); *see also Turlington v. Aman*, 163 N.C. 555, 559, 79 S.E. 1102, 1104 (1913) (providing that facts sufficient to establish a cause of arrest within a complaint are also sufficient upon which to issue an execution against the person).

41.     The Court is not convinced that G.S. § 1-311 creates a civil cause of action. *See Safford v. Barnes*, 2014 U.S. Dist. LEXIS 158863, at *18 (M.D.N.C. Nov. 10, 2014) ("[G.S. §§ 1-410 and 1-311] merely allow the execution of a judgment against an individual who may have been arrested in a civil action. . . . They do not create a private right of action.") Rather, it appears that the remedy of a post-judgment execution against the person may properly be raised following entry of a judgment and the failure of an execution against the judgment-debtor's property so long as the underlying judgment was based on facts that would support one of the reasons for arrest under G.S. § 1-410. *Grimes v. Miller*, 429 F. Supp. 1350, 1355, 1977 U.S. Dist. LEXIS 16432 (M.D.N.C. 1977) ("N.C. Gen. Stat. § 1-311 requires that facts be found by a jury or by a judge 'establishing the right to execution against the person.'"). Plaintiff has alleged such facts here, including in her claims for fraud (First Am. Compl. ¶¶ 140—148,) conversion (First Am. Compl. ¶¶ 160—164,) and potentially other claims. If Bandy obtains a judgment on one or more of those claims, and cannot satisfy that judgment by execution on Margaret's property, she will have satisfied the requirements of G.S. § 1-311.

42.     As Bandy's claim for judgment against the person is not an individual cause of action, the Motion for judgment on the pleadings concerning Count X should be GRANTED. Count X is dismissed WITHOUT PREJUDICE. This Order, however, shall not preclude Bandy from seeking to execute against the person of Margaret pursuant to G.S. § 1-311 if facts entitling Bandy to such an execution are ultimately entered into judgment.

THEREFORE, IT IS ORDERED that:

43.     The Motion for judgment on the pleadings concerning Bandy's claim for unjust enrichment is DENIED.

44.     The Motion for judgment on the pleadings concerning Bandy's claim for violation of the UDTPA is GRANTED, and the claim is DISMISSED WITH PREJUDICE.

45.     The Motion for judgment on the pleadings concerning Bandy's claim for judgment against the person is GRANTED, and the claim is DISMISSED WITHOUT PREJUDICE as provided herein.

This the 26th day of July, 2017.


      /s/ Gregory P. McGuire
      Gregory P. McGuire
      Special Superior Court Judge
        for Complex Business Cases